COOPER FOUNDATION, a corporation, Appellant,

v.

George W. O'MALLEY, Appellee.

No. 15162.

United States Court of Appeals
Eighth Circuit.

April 21, 1955.

John C. Mason, Lincoln, Neb. (Maxwell V. Beghtol, Kenneth E. Anderson, Richard A. Knudsen, Roger V. Dickeson, Lincoln, Neb., and Richard L. Berkheimer, Gordon, Neb., on the brief), for appellant.

Philip R. Miller, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, David O. Walter, Sp. Assts. to Atty.. Gen., and Donald R. Ross, U. S. Atty., Omaha, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

COLLET, Circuit Judge.

The Cooper Foundation, a charitable corporation, brought this action in the District Court of Nebraska to recover $84,980.36 paid for income taxes for the year 1943. From an adverse judgment it prosecutes this appeal.

Prior to July 6, 1943, the Ute Theatre in Colorado Springs, Colorado, was owned by the Rialto corporation and was then under lease to the Interstate corporation, which latter corporation was op-

erating it. One-half of the stock of Interstate was owned by Mr. J. H. Cooper, who had established the Cooper Foundation and was active in its management. The other one-half was owned by Mr. J. E. Tompkins. On July 6, 1943, the Cooper Foundation purchased the Ute Theatre from Rialto. Interstate's lease at that time had about four years yet to run. A long-term lease of 25 years was negotiated between Interstate and the Cooper Foundation, the new owner of the Theatre building. The old lease was cancelled. The new lease, dated August 13, 1943, was effective July 15, 1943. It provided for substantially the same rental payments as the old, but in consideration of the execution of the new 25-year lease, Interstate paid the Cooper Foundation a premium of $117,458.35.

On December 28, 1943, Mr. Tompkins sold his half interest in the stock of Interstate to the Cooper Foundation. Mr. Cooper transferred his one-half interest in Interstate's stock to the Foundation also. Thus the Cooper Foundation became the owner of all of Interstate's stock. Since by prior purchase the Foundation had become the owner of the theater building which was under lease to Interstate, on December 28, 1943, it became the owner of both the fee title and the leasehold. The 25-year lease was cancelled pursuant to one of the terms of the written agreement for the transfer of Interstate's stock to the Foundation. At the time of the transfer of Interstate's stock to the Foundation, Interstate was dissolved and liquidated. The premium of $117,458.35 paid by Interstate to the Cooper Foundation in July, 1943, was charged off as a loss on Interstate's 1943 income tax return. The deduction was disallowed, a deficiency assessment was made against Interstate of $84,980.36 which was paid under protest by the Cooper Foundation. Claim for refund being disallowed, this action was instituted. The cause was tried by the court without a jury. Detailed findings of fact, conclusions of law, and a memorandum opinion were filed by the trial court. They are reported at 121 F. Supp. 438.

The trial court held that the lease was, in effect, distributed to the stockholder—the Cooper Foundation—upon the dissolution and liquidation of Interstate, and that the premium paid for the 25-year lease being a capital asset transferred to the Foundation, the lease theoretically continued in existence and could not be treated as a loss to Interstate deductible in 1943. Upon that premise the complaint was dismissed. The court did not pass upon the question of whether Interstate, and the Cooper Foundation as its successor, were entitled to deduct an aliquot part of the $117,458.35 premium for the year 1943. In its memorandum opinion the court, after stating that other considerations adequately disposed of the case, stated that many of the circumstances surrounding the transactions indicated a sham for the purpose of evading taxes. Upon this appeal both parties brief and submit this latter question for our determination in order that, should the trial court be sustained in its holding that the entire premium was not properly deductible in 1943, the question of the Foundation's right to future annual deductions of aliquot parts of the premium now be determined. The submission of this question by both parties carries with it the implied assurance that the record now made adequately contains all the facts necessary to its determination by us.

▮▮▮▮ The trial court correctly held that the entire premium was not deductible in 1943. It was not annual rent and deductible as such under § 23(a) of the Revenue Code of 1939, 26 U.S.C.A. § 23 (a), but was a capital asset subject to amortization over the 25-year period of the lease, unless the entire transaction was a sham. King Amusement Co. v. Commissioner, 3 Cir., 44 F.2d 709; Baton Coal Co. v. Commissioner, 6 Cir., 51 F.2d 469; Main & McKinney Bldg. Co. v. Commissioner, 5 Cir., 113 F.2d 81. The theory upon which the taxpayer contends that it should be treated as a

loss in 1943 is that the lease was cancelled and as a result its entire value (after running only approximately five months) was lost. The trial court expressly found that the cancellation of the lease "was in substance a distribution in liquidation" and a transfer of the interest covered by the lease to the Foundation. This was at least a permissible factual conclusion and as such should not be disturbed. United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251.

 The pleadings were sufficiently broad to present the question of whether an aliquot part of the premium was deductible in 1943. The facts are before us and the question is presented for determination.

 No part of the premium would be deductible at any time if the entire transaction was a sham for the purpose of evading taxes. Although, as stated, the trial court alluded to the subject, we do not understand that the allusion was intended as a finding to that effect. On the contrary, it is clear that it was not so intended. And we find no justification in the record for that formal conclusion. Hence, we consider the question of the proper treatment of the premium.

 The Government concedes that if the pleadings are sufficiently broad to ask for a refund of the aliquot portion of the $117,458.35 premium and that the transaction was not a sham, the judgment of dismissal should be modified to allow the deduction of $2,163.84 for the year 1943. And that is a proper concession. § 29.23(a)–10, Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, 26 CFR 29.23(a)–10, is as follows:

"§ 29.23(a)–10. Rentals. If a leasehold is acquired for business purposes for a specified sum the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run. * * "

The Tax Court has consistently held that bonuses such as the one now involved are in the nature of capital expenditures and the lessee is entitled to deduct a ratable amount thereof from gross income for each taxable year ending within the term of the lease. This treatment of such bonus payments has as consistently been approved. King Amusement Co. v. Commissioner, supra; Baton Coal Co. v. Commissioner, supra; Main & McKinney Bldg. Co. v. Commissioner, supra.

For the reasons stated, the cause is remanded with directions to enter judgment for appellant on the basis of an allowance of a deduction of the aliquot portion of the $117,458.35 premium for the year 1943.